UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LONE STAR COLLEGE SYSTEM, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-529 |
| | § | |
| EQUAL EMPLOYMENT OPPORTUNITY COMM.., | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

Pending before the court is defendant Equal Employment Opportunity Commission's ("E.E.O.C.") motion to dismiss plaintiff Lone Star College System's ("Lone Star") complaint. Dkt. 14. After considering the motion, responses, and the applicable law, the court is of the opinion that the motion should be **GRANTED**.

**I. BACKGROUND**

This case stems from an E.E.O.C. investigation into a charge against Lone Star to determine whether there was reasonable cause to believe that Lone Star was engaged in unlawful employment practices. During the investigation, the E.E.O.C. issued subpoenas to Lone Star that sought information and witness interviews. Lone Star did not fully comply with the subpoenas because it believed, and still believes, that the investigation is unauthorized by law and is being conducted improperly. E.E.O.C. has not sought judicial enforcement of the subpoenas. Lone Star filed this lawsuit alleging that the E.E.O.C. did not follow its own procedures, regulations and enabling statutes in the launch and execution of the investigation. Dkt. 11 at 1–2. Lone Star claims the lawsuit is fundamentally about when the E.E.O.C. can launch a federal investigation and subject an

employer to the same; and what procedures the E.E.O.C. must follow in arriving at its ultimate conclusion. *Id.* at 3.

Lone Star alleges eleven different claims against the E.E.O.C.: 1) Opening an investigation against a potential aggrieved party without an authorizing rule or regulation (*Id.* at 34); 2) Violation of the E.E.O.C.'s duty to verify an aggrieved party to a charge (*Id.* at 45–46); 3) Attempting to interview management employees outside the presence of counsel (*Id.* at 48); 4) Attempting to depose Lone Star's General Counsel and former Associate General Counsel generally, and for attempting to question both persons about matters protected by the attorney-client privilege (*Id.* at 51–52); 5) Allowing conflicted employees to participate in the investigation in violation of ethics standards for Executive Branch employees (*Id.* at 53–54); 6) Disclosing information obtained from the investigation of Lone Star to a third-party; (*Id.* at 55–56); 7) Demanding that Lone Star provide a third-party database technician to help the E.E.O.C. access Lone Star's records (Id. at 58–59); 8) Continuing its investigation without particularized facts (*Id.* at 89–60); 9) Requiring compliance with investigations that are an undue hardship on Lone Star (*Id.* at 60–61); 10) Violation of the Fourth Amendment right against unreasonable searches and seizures (*Id.* at 62–64); 11) Violation of the Fifth Amendment right against takings by demanding a database technician to access Lone Star's data (*Id.* at 65–67).

The E.E.O.C. filed the instant motion to dismiss all claims against it under Federal Rule of Civil Procedure Rule 12(b)(1) for lack of jurisdiction over the subject matter of the complaint and under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. 14 at 1. Alternatively, the E.E.O.C. moves for summary judgment in its favor. More specifically, the E.E.O.C. claims that this court lacks subject matter jurisdiction because the case is not ripe for review, the plaintiff lacks standing, and none of the statutes or law cited allows

2

for the causes of action asserted. Additionally, the E.E.O.C. asserts that Lone Star has failed to sufficiently plead its causes of action. Finally, the E.E.O.C. claims that Lone Star has failed to demonstrate that equitable relief, including injunctive and declaratory relief, is warranted. Lone Star has responded to the motion to dismiss and it is ripe for consideration.

## II. LEGAL STANDARD

### A. *Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction*

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Parties may use this rule to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 284 F.3d 158, 161 (5th Cir. 2001). Generally, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* "The burden of proof in such a challenge is on the party asserting jurisdiction." *Id.* However, "there is no mandatory sequencing of jurisdictional issues," and "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431, 127 S. Ct. 1184, 1191 (2007) (internal quotations omitted). "A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders*, 143 F.3d at 1010.

### B. *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*,

699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps. First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79. Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679.

C.     ***Rule 56 Motion for Summary Judgment***

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). A fact issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the [nonmovant]." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

When the movant bears the burden of proof on an issue, he must establish beyond peradventure *all* of the essential elements of the claims or defenses to warrant judgment in his favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But when the

movant does not bear the burden of proof on a claim or affirmative defense, he bears the initial burden of production to show an absence of evidence to support the non-movant's claim. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). If the movant makes this showing, the ultimate burden to avoid summary judgment shifts to the non-movant who "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Davis-Lynch, Inc., v. Moreno*, 667 F.3d 539, 550 (5th 2012). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are no substitute for specific facts showing a genuine dispute for trial. *TIG Ins. Co.*, 276 F.3d at 759.

### III. ANALYSIS

#### A. *Substantive Law*

Ripeness is a justiciability doctrine designed to prevent the courts from entangling themselves in abstract disagreements over administrative policies. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08, 123 S. Ct. 2026, 2030 (2003). It protects agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Id.*

The Administrative Procedure Act ("APA") authorizes judicial review of final agency action when a relevant administrative agency statutory provision does not directly provide for judicial review. 42 U.S.C. § 704. Without a statutory provision or final agency action, however, a court lacks subject matter jurisdiction over an APA claim. *Am. Airlines v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999). Therefore, when considering the ripeness of a dispute in the administrative agency context, the court must determine whether there is final agency action. The elements to establish the ripeness of a claim under the APA are: "(1) whether the issues are purely legal; (2) whether the issues are based on a final agency action; (3) whether the controversy has a direct and immediate

impact on the plaintiff; and (4) whether the litigation will expedite, rather than delay or impede, effective enforcement by the agency." *Tex. Office of Pub. Util. Counsel v. F.C.C.*, 183 F.3d 393, 410 n.11 (5th Cir. 1999).

A final agency action must 1) "mark the 'consummation' of the agency's decisionmaking process, it must not be of a merely tentative or interlocutory nature," and 2) "be one by which rights or obligations have been determined, or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 178–79, 117 S. Ct. 1154 (1997) (internal quotations and citations omitted). There is a narrow exception, however, that allows a court to enforce a non-final agency action when that action is in excess of delegated powers. *Leedom v. Kyne*, 358 U.S. 184, 190, 79 S. Ct. 180 (1958). "A claim that an agency action is in plain contravention of a statutory mandate . . . may present one of the extraordinary exceptions to the finality requirement." *Veldhoen v. U.S. Coast Guard*, 35 F. 3d 222, 225 (5th Cir. 1994). Courts only apply this exception in "very narrow situation[s]," when there is a "'plain' violation of an unambiguous and mandatory provision of the statute. *Am. Airlines*, 176 F. 3d at 293. "Only the egregious error melds the agency's decision into justiciability." *Id.* "Lesser malignancies thwart the jurisdiction of the courts." *Id.* When review under this exception is granted, it is "because the agency's challenged action is so contrary to the terms of the relevant statute that it necessitates judicial review independent of the review provisions of the relevant statute." *Kirby Corp. v. Pena*, 109 F.3d 258, 269 (5th Cir. 1997).

The claims in this case involve an investigation by the E.E.O.C. that is allegedly unauthorized and being conducted improperly. The E.E.O.C. is a federal agency empowered to prevent any person from engaging in unlawful discrimination in employment practices under Title VII. 42 U.S.C. § 2000e-5(a); *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 77, 104 S. Ct. 1621 (1984). The E.E.O.C.'s enforcement provisions involve an investigatory process that occurs before any lawsuit is filed

against the employer engaged in the allegedly unlawful employment practice. 42 U.S.C. § 20003-5(b). The process generally works in a systematic way. *See generally*, *E.E.O.C. v Hearst Corp.*, 103 F.3d 462, 465 (5th Cir. 1997). It begins when a charge is filed by or on behalf of a person claiming to be aggrieved, or a member of the E.E.O.C., alleging that an employer or applicable group has engaged in an unlawful employment practice. § 20003-5(b). Then the E.E.O.C. serves notice of the charge on the employer and investigates the charge. *Id.* If the E.E.O.C. determines, after investigation, that there is not reasonable cause to believe the charge is true, the charge is dismissed. *Id.* If the E.E.O.C. instead determines that there is reasonable cause to believe the charge is true, the E.E.O.C. endeavors to eliminate the employment practice by informal methods of conference, conciliation, and persuasion. *Id.* If conciliatory methods are not effective, then the E.E.O.C. is empowered to bring a civil action against the employer. § 2000e-5(f)(1).

As part of the investigation of a charge, the E.E.O.C. shall "have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [the] subchapter [that are] relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). "In obtaining such evidence, the [E.E.O.C.] may exercise all of the powers conferred upon the National Labor Relations Board by 29 U.S.C. § 161, including the authority to issue administrative subpoenas and to request judicial enforcement of those subpoenas." *Shell Oil Co.*, 466 U.S. at 63 (citing 42 U.S.C. § 2000e-9). If the E.E.O.C. requests, by subpoena, information from a person that the person believes is not relevant or properly described, it can challenge the subpoena to the E.E.O.C.. 29 C.F.R. § 1601.16(b). And if the person from whom information is requested refuses to comply, the E.E.O.C. can seek a court order to compel compliance. *Id.* at § 1601.16(c).

Many questions regarding E.E.O.C. final agency action have already been settled. The adequacy, nature, and extent of an E.E.O.C. investigation is not justiciable, as it falls within the discretion of the agency. *E.E.O.C. v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984); *E.E.O.C. v. BOK Fin. Corp.*, 995 F. Supp. 2d 1251, 1253 (D.N.M. 2014). The actions that make up the investigation process, including filing a charge, issuing subpoenas as part of its investigation, making a reasonable cause determination, and the conciliation process, also are not final agency actions capable of being submitted for judicial review, as they do not fix obligations or legal relationships. *Georator Corp. v. E.E.O.C.*, 592 F.2d 765, 768 (4th Cir. 1979) (E.E.O.C.'s determination of reasonable cause is not final agency action because the action does not fix obligations or legal relationships) (citing *ITT v. Elec. Workers*, 419 U.S. 428, 95 S. Ct. 600 (1975)); *Valley Indus. Servs. Inc. v. E.E.O.C.*, 570 F. Supp. 902, 905 (N.D. Cal. 1983) ("[T]he employer cannot be bound involuntarily by any [E.E.O.C.] action until full adjudication in federal court has been completed."); *Standing Rock Hous. Auth. v. E.E.O.C.*, 585 F. Supp. 2d 1112, 1119–20 (D.N.D. 2008) ("The E.E.O.C.'s issuance of the subpoena was not a final agency action," as the E.E.O.C. was still in the investigatory stages of the proceedings and had not sought judicial enforcement of the subpoena.). In other words, because the E.E.O.C. has no enforcement powers of its own, until a full adjudication in federal court is completed, the legal position of a party being investigated has not changed. *Valley Indus.*, 570 F. Supp. at 905l This rule avoids premature and piecemeal judicial review that is inefficient and deprives the E.E.O.C. of the opportunity to rectify mistakes. *Id.*

While the E.E.O.C.'s issuance of a subpoena is not final agency action subject to judicial review, if the E.E.O.C. decides to judicially enforce the subpoena, a court makes that decision. At that point, courts consider whether: 1) "the subpoena is within the statutory authority of the agency; 2) the information sought is reasonably relevant to the inquiry; and 3) the demand is not

8

unreasonably broad or burdensome." *United States. v. Transcocean Deepwater Drilling, Inc.*, 767 F.3d 485, 488 (5th Cir. 2014); *Shell Oil Co.*, 466 U.S. at 64. Courts will not enforce an administrative subpoena if these three requirements are not met or if the subpoena was issued for an improper purpose, such as harassment. *Burlington N. R.R. Co. v. Office of the Gen., R.R. Ret. Bd.*, 983 F.2d 637, 638 (5th Cir. 1993). In determining whether to enforce a subpoena, courts have also considered the good faith of the E.E.O.C.'s actions, whether the E.E.O.C. investigator has a personal vendetta against the employer, and whether there are personal conflicts involved. *See, e.g.*, *E.E.O.C. v. First Ala. Bank of Birmingham*, 440 F. Supp. 1381, 1385 (S.D. Ala. 1977); *E.E.O.C. v. Alliance Residential Co.*, 866 F. Supp. 2d 636, 644 (W.D. Tex. 2011). When parties file suit to avoid compliance with a subpoena, "courts generally dismiss anticipatory actions filed by parties challenging such subpoenas as not being ripe for review because of the availability of an adequate remedy at law if, and when, the agency files an enforcement action." *In re Ramirez*, 905 F.2d 97, 98 (5th Cir. 1990).

### *B.    Application*

Lone Star argues its claims are ripe and it is not bound by the final agency action requirement because it is not challenging a decision by the E.E.O.C. The court determines below, however, that Lone Star's claims must be either dismissed for lack of ripeness due to a lack of final agency action, or for not being authorized by the law on which they rely.

*1.    Is Lone Star Challenging a Final Agency Action?*

Lone Star argues that the agency's written determinations on Lone Star's petition to revoke the subpoenas is final agency action sufficient to garner judicial review. Dkts. 11 at 22–25; 18 at 15–17. However, the E.E.O.C. cannot enforce the subpoenas discussed in the determination without

a court order, therefore the determination fixes no obligations or consequences on Lone Star, meaning it is not final agency action. *Georator*, 592 F.2d at 768; *Valley Indus.*, 570 F. Supp. at 905.

2.  *Must an Employer Comply with an E.E.O.C. Investigative Subpoena?*

Though compliance with a subpoena from the E.E.O.C. may speed the investigation along, and in many cases is the right thing to do, there may be valid reasons not to comply with an E.E.O.C. subpoena absent court-ordered compliance. If a person under investigation decides not to comply with the subpoenas, the E.E.O.C. has no authority to enforce the subpoena. Only a court can order compliance. At the point of enforcement, concerns about the propriety of the E.E.O.C.'s conduct can be raised. 29 C.F.R. § 1601.16(b)–(c) (outlining the process employers should follow if they choose not to comply with the E.E.O.C.'s subpoena).[1]

3.  *Claims 1, 2 and 8: No authorization to investigate*

Lone Star's first claim argues that the E.E.O.C.'s investigation is invalid and unauthorized because the charge has been launched on behalf of "potential aggrieved parties," and not an actual aggrieved party, representative of such a party, or a commissioner's charge, as required by the E.E.O.C.'s governing statute. Dkt. 11 at 35. Relatedly, the second claim argues that the E.E.O.C. must verify the authorization of a charge by the person on whose behalf the charge is made. The

---

[1] *See also*, *Standing Rock*, 585 F. Supp. 2d at 1119 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S. Ct. 1011 (1974)) (explaining that if the person being investigated "refuses to provide the documents requested in the subpoena, the E.E.O.C. is powerless on its own to enforce the subpoena. For the subpoena to have any legal effect, the E.E.O.C. must seek judicial enforcement of the subpoena."); *Alexander*, 415 U.S. at 44 "Title VII does not provide the [E.E.O.C.] with direct power of enforcement. The [E.E.O.C.] cannot adjudicate claims or impose administrative sanctions. Rather, the final responsibility for enforcement of Title VII is vested with federal courts."); *Valley Indus. Servs. Inc. v. E.E.O.C.*, 570 F. Supp. 902, 905 (1983) (pointing out that an issuance of an E.E.O.C. complaint, issuance of a subpoena, a finding of reasonable cause, and an attempt at conciliating the problem are not final agency action, and "the employer cannot be bound involuntarily by any [E.E.O.C.] action until full adjudication in federal court has been completed."); *E.E.O.C. v. First Ala. Bank*, 440 F. Supp. at 1384 (explaining that the employer being investigated had a right to decline to comply with the subpoena).

eighth claim states that the charge does not have a clear and concise statement of the facts, dates, or alleged unlawful employment practices.

According to Lone Star's complaint, the E.E.O.C. has twice made a determination that the investigation is lawful and authorized. Dkt. 11 at 47. Therefore, the E.E.O.C. has conducted at least some investigation into the propriety of the charges against Lone Star. Because of this, the court does not find that this is the kind of exceptional circumstance where the alleged conduct is such an obvious violation of a mandatory provision that persuades the court to overlook the requirement for final agency action. *Leedom*, 358 U.S. at 190. And, the Supreme Court assumes that disputes about the content or validity of the charge are significant only if the E.E.O.C. seeks to enforce a subpoena. *Miss. Chem. Corp. v. E.E.O.C.*, 786 F.2d 1013, 1017 (11th 1986) (citing *Shell Oil Co.*, 466 U.S. at 64). Employers are protected because a valid charge is required in order to enforce a subpoena. *Id. Shell Oil Co.*, 466 U.S. at 64 (the E.E.O.C. cannot "insist than an employer obey a subpoena despite the failure of the complainant to file a valid charge . . . .").

Therefore, if Lone Star believes the charge is invalid or insufficient, its remedy is to refuse to comply with subpoenas from the E.E.O.C. in accordance with regulations regarding such refusals to comply.[2] Then, if the E.E.O.C. seeks judicial enforcement of its subpoenas, it will have to demonstrate the validity of the charge to the court. However, the claims currently before the court are not brought in relation to the judicial enforcement of a subpoena and are not challenging final

---

[2] *See*, *e.g.*, 29 C.F.R. § 1601.16. Of course, when the court explains that compliance is not required, the court is not advocating that parties flout an E.E.O.C. investigation just because they do not like being investigated. Congress designed the E.E.O.C. to address the very serious problem of employment discrimination. Taking this problem, and the E.E.O.C.'s role in developing solutions, seriously is important for everyone, including employers. "Absent a showing of unreasonable burden or agency abuse, employers must shoulder their share of enforcement costs to enable the antidiscrimination laws to function as Congress intended." *Valley Indus.*, 570 F. Supp. at 907.

11

agency action. They are not ripe for review. Accordingly, the motion to dismiss claims one, two and eight is GRANTED.

4.     *Claims 3, 4, and 7: Investigation Concerns*

Claim three complains that the E.E.O.C. does not want to allow Lone Star employees to have counsel present during its interview with those employees. Claim four complains that the E.E.O.C. wants to question Lone Star's general counsel and former general counsel, and complains that the E.E.O.C. wants to question those persons about matters protected by attorney-client privilege. Claim seven complains that the E.E.O.C. has requested a database technician to aid in sorting through Lone Star's database.

All of these claims involve different facets of the investigation process. If Lone Star does not believe that the E.E.O.C. is complying with its subpoenas, that a subpoena is not proper, or some other related improper behavior is occurring, Lone Star's remedy is to not comply with the subpoena, in accordance with the regulations regarding such a decision.[3] If the E.E.O.C. seeks a court order to enforce the subpoenas, the court can consider these three arguments when considering whether to order the interviews or other requests, as it will be considering the E.E.O.C.'s authority to make the request, whether the request is relevant to the charge, and whether the request creates an undue burden on Lone Star. *See, e.g.*, *Transcocean*, 767 F.3d at 488.

These claims are not ripe for review because there is no final agency action or a move to enforce a subpoena. And the kind of exceptional circumstances that might persuade the court to overlook the requirement for final agency action are not present. *Leedom*, 358 U.S. at 190. Accordingly, the motion to dismiss as to claims three, four, and seven is GRANTED.

---

[3] *See, e.g.*, 29 C.F.R. § 1601.16.

5.  *Claim 5: Conflicted Investigator*

Claim five asserts that the investigator on the case has a conflict of interest, or at least appears to be biased, and his conduct and putting him on the case is in violation of the ethical code of conduct for executive branch employees, codified at 5 C.F.R. § 2635.502(d). Lone Star seeks a declaratory judgment and injunction, an order to compel compliance, and an action under the APA to require the E.E.O.C. to undergo the process delineated in 5 C.F.R. § 2635.502, "whatever the process might be in the Court's estimation." Dkt. 11 at 55.

It has been established that this E.E.O.C. investigation is not a final agency action. And, the court is not persuaded that the appointment of an investigator to conduct that investigation is either. Further, the allegation of an investigator with a conflict of interest is not the kind of exceptional circumstance that alleges conduct that is such an obvious violation of a mandatory provision that it persuades the court to overlook the requirement for final agency action. *Leedom*, 358 U.S. at 190. Aside from judicial review of an agency's appointment of the investigator as an alleged final agency action, the regulations that Lone Star claims were violated specifically state that violation of the regulation does not create an enforceable right against an agency, its officers or employees, or any other person.[4] 5 C.F.R. § 2635.106(c). Therefore, there does not appear to be a stand alone cause of action for a violation of the regulation. *See Allstate Life Ins. Co. v. Estate of Reed*, No. 1:05-CV-164-LG, 2007 WL 1040507, at *5 (S.D. Miss. Mar. 30, 2007) (the Standards of Ethical Conduct of Employees of the Executive Branch "do not create a private right of action, such that [plaintiff] is

---

[4] The code of conduct explains that a violation of the standards "may be cause for appropriate corrective or disciplinary action under applicable [Government wide] regulations or agency procedures." 5 C.F.R. § 2635.106(a). "Such action may be in addition to any action or penalty prescribed by law." *Id.* However, "[a] violation of this part or of supplemental agency regulations, as such, does not create any right or benefit, substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person." § 2635.106(c).

not entitled to any relief pursuant to these regulations.") (citing *Sherer v. United States*, 241 F. Supp. 2d 1270, 1284–84 (D. Kan. 2003)).

As with its other claims, Lone Star can assert these conflicts of interest concerns if the E.E.O.C. seeks judicial enforcement of its subpoenas. For example, courts will not enforce an administrative subpoena if it was issued for the purpose of harassment. *Burlington N.*, 983 F.2d at 638 (citing *United States v. Powell*, 379 U.S. 48, 58, 85 S. Ct. 248 (1962)). Courts have also considered whether the subpoena was issued "in good-faith pursuit of a congressionally authorized purpose." *Id.* at 637, n.2 (citing *United States v. LaSalle Nat. Bank*, 437 U.S. 298, 307, 98 S. Ct. 2357 (1978)). In a district court case out of Alabama, the court denied enforcement of a subpoena when the investigator requested the subpoena for a purpose unrelated to the charges under investigation: to strike back at the employer's attorney, with whom the investigator had a personal conflict. *First Ala. Bank of Birmingham*, 440 F. Supp. at 1385. The investigator's varied, conflicted conduct reflected on the "good faith of the purported investigation as to mandate a rejection of the application for enforcement." *Id.* The court explained that the E.E.O.C.'s "subpoena powers were not intended to provide to E.E.O.C. employees a vehicle to pursue their own personal vendettas." *Id.* The court further concluded that it was improper for the investigator to even serve in his role given his personal conflicts. *Id.*

Lone Star's allegations that the investigator should not have been appointed, and allegations of the investigator's improper conduct are not ripe, but they can be considered by a court at the time the E.E.O.C. seeks to enforce a subpoena. For all these reasons, the motion to dismiss claim five is GRANTED.

*6.     Claim 6: Future Disclosure of Information*

Claim six involves Lone Star's claim that the E.E.O.C. intends to provide a third party with a list of all of Lone Star's Hispanic employees. Lone Star's complaint acknowledges that the action complained of has not actually happened yet. Dkt. 11 at 56. Lone Star supports its claim by explaining that it has evidence that, in the past, the E.E.O.C. Houston office has been sharing evidence with third parties. *Id.* Plaintiff seeks a declaratory judgment and injunction that the E.E.O.C.'s actions are unlawful, and an order requiring the E.E.O.C. not to disclose information to anyone outside of the E.E.O.C.

The statute governing E.E.O.C. investigations provides stiff penalties to officers or employees of the E.E.O.C. if they distribute information obtained during an investigation, and prior to the institution of a proceeding involving that information, in public "in any manner whatever." 42 U.S.C. § 2000e-8. If convicted, offenders will be guilty of a misdemeanor, fined up to $1,000, or imprisoned up to a year.

Lone Star does not assert a final agency action to challenge. And, by Lone Star's own complaint, the specific information complained of has not been released. Nor is it clear what other information Lone Star is concerned about, given that it has not alleged any other specific information, or even types or categories of information, that has been released. Further, Lone Star does not seek enforcement of the statutory provision, it instead wants this court to declare what the law is and order that the E.E.O.C. follow the law. However, the law is already clear about what is prohibited, and it is also clear that agencies must abide by the law.

At this point, the only alleged injury pled with appropriate specificity has not occurred. Plaintiff has not persuaded this court that it should, or that it could, engage in pre-violation review of the E.E.O.C.'s actions, or that it could issue an advisory opinion that the alleged conduct would

15

violate the law if it occurred. Should the list or other information be released, and such a violation can be pled with sufficient particularity, Lone Star can always seek to enforce the statutory provision at that time. Accordingly, the motion to dismiss as to claim six is GRANTED.

7.  *Claims 10 and 11: Constitutional Claims*

Claim ten asserts that because the E.E.O.C.'s investigation is not lawful, the information requested by the E.E.O.C. as part of its investigation is an unlawful search and seizure in violation of the Fourth Amendment of the Constitution. This claim is premised on a finding that the investigation is not lawful. Lone Star even concedes that the searches and seizures might well be lawful if the investigation was lawful. Congress empowered the E.E.O.C. to investigate charges of discrimination, though it gave it limited enforcement authority when conducting investigations. *Shell Oil*, 466 U.S. at 65. The E.E.O.C.'s requests for information through a subpoena must be enforced by a court, and courts consider whether the subpoena is within the authority of the E.E.O.C. at that point. *Transocean*, 767 F.3d at 488. A court will not enforce a subpoena related to an unauthorized investigation. So, while the court does not review an E.E.O.C. investigation in the abstract, it will consider whether the E.E.O.C.'s actions are authorized before requiring compliance with a subpoena. The E.E.O.C. has not yet sought compliance of a subpoena, therefore the court will not consider whether the E.E.O.C.'s actions are authorized. At this point, there is not even an alleged injury. And, Lone Star has not been required to submit to any searches, seizures or other parts of the investigation, and it cannot be required to do so until the E.E.O.C. seeks judicial enforcement of a subpoena. This claim is not ripe. Accordingly, the motion to dismiss as to the tenth claim is GRANTED.

Claim eleven asserts that if Lone Star has to comply with the E.E.O.C.'s request for a database technician, its Fifth Amendment Constitutional right against unlawful taking will be

violated. The pleadings state that the violation of rights will occur in the future: "to the extent that [the] E.E.O.C. insists on this course of conduct, it would constitute a taking under the Fifth Amendment . . . ." Dkt. 11 at 65. Again, no injury has yet occurred and this claim is not ripe. Further, the propriety of seeking a database technician by subpoena will be considered by a court upon enforcement, as subpoena requests must be relevant and not unreasonably broad or burdensome. *Transocean*, 767 F.3d at 488. Lone Star does not have a ripe Fifth Amendment claim. Accordingly, the motion to dismiss as to the eleventh claim is GRANTED.

8.     *Claim 9: Participation is an Undue Hardship*

Lone Star cites a particular portion of 42 U.S.C. § 2000e-8(c) for the proposition that it can bring an action in civil court when it believes that the application to it of any regulation or order issued by the E.E.O.C. would result in undue hardship. Dkt. 11 at 60. Lone Star's claims relate to the E.E.O.C.'s requests to depose two witnesses and for the help of a data technician to aid in reviewing a database, and speculation that the E.E.O.C. is seeking a list of Hispanic employees. Lone Star seeks "appropriate relief," as allowed in the statute. The E.E.O.C. asserts that the language relied upon only applies to requirements on employers to submit records about their work force, not an individualized investigation. Dkt. 14 at 15 n.10.

Under subsection 8(c), some employers must keep records relevant to whether unlawful employment practices have been or are being committed, employers must preserve those records, and employers must submit reports as required by the E.E.O.C. 42 U.S.C. § 2000e-8(c). But, if an employer believes that keeping such records or filing such reports would result in undue hardship, they may apply for an exemption from the requirement. *Id.* If that exemption is denied, the employer may bring an action in federal district court, which can grant appropriate relief from the undue hardship. *Id.*

The party bringing a claim bears the burden to establish jurisdiction. The court is not persuaded that this statutory language in subsection 8(c) allows the cause of action that Lone Star seeks to bring. First, the statutory language does not apply to "*any* regulation or order issued by the E.E.O.C. that results in undue hardship," as Lone Star posits. Dkt. 11 at 60 (emphasis added). Instead the language says it only applies to regulations or orders issued under section 2000e-8. Further, the court finds merit to the argument that the statutory language relied upon only applies to a recordkeeping-related regulation or order.

The only relevant regulation based on this statutory clause relates to an employer's exemption from its annual reporting requirements. *Compare* 29 C.F.R. § 1602.7 (requiring annual reports from employers) with § 1602.10 (providing an exemption to the annual requirement for undue hardship). Further, throughout subsection 8(c), the language discusses a "regulation or order." 42 U.S.C. 2000e-8(c). The heading to subsection 8(c) even states that the section is, in part, about "appropriate relief from regulation or order for undue hardship," meaning relief only applies to these regulations or orders. *Id.* And, the section describes that these regulations or orders are prescribed by the Commission *after a public hearing*. *Id.* This alone shows that the regulation or order from which an employer can seek appropriate relief is a formal order that requires public input and is related to ongoing reporting requirements that apply to more than one person.[5] There is no support in the statute that the language applies to a one-time request or subpoena for information by the E.E.O.C. pursuant to a charge it is investigating, as Lone Star suggests.

Despite the fact that Lone Star bears the burden to show the applicability of this statute as a basis for jurisdiction, it cites no case law applying the language it relies upon in the way it wants the court to apply the language. Secondary sources support the government's position. "The only

---

[5] Such as, for example, the annual reporting requirement for employers outlined in 29 C.F.R. § 1602.7.

18

administrative exemption authorized by Title VII of the Civil Rights Act of 1964 relates to the Act's reporting requirements." 21 Fed. Proc., L. Ed. § 50:4 (2015); *see also* 14A C.J.S. Civil Rights § 559 (2015); 2 Emp. Discrim. Coord. Analysis of Federal Law § 99:3 (2015).

From a common-sense perspective, if this language buried within a recordkeeping subsection truly supported a viable avenue to challenge an E.E.O.C. investigation, at least some case law would address such an assertion, given the large amount of litigation over more than forty years between employers and the E.E.O.C. regarding challenges to investigations and subpoenas. However, the court has found none, and Lone Star has not provided any. There is, however, a large amount of case law that disallows parties from proactively challenging the adequacy of an E.E.O.C. investigation or subpoena.

Therefore, the language upon which Lone Star relies in 42 U.S.C. § 20003-8(c) does not support claim nine. Of course, if the E.E.O.C. seeks to judicially enforce any of the requests that Lone Star complains of, a court will consider whether the requests place an undue burden on Lone Star before it enforces a subpoena for such information. Accordingly, the motion to dismiss claim nine is GRANTED.

## V. CONCLUSION

The court has determined that Lone Star's claims are not ripe or the law upon which they are based does not allow such a claim.[6] Therefore, this court lacks jurisdiction to consider these claims. Because the court dismisses the claims on this basis, it will not consider the Rule 12(b)(6) challenge, nor the request for summary judgment. For the foregoing reasons, the court **GRANTS** the motion to dismiss as to all claims, for lack of jurisdiction.

It is so **ORDERED**.

Signed at Houston, Texas on March 12, 2015.

_____
Gray H. Miller
United States District Judge

---

[6] The E.E.O.C. alternatively argues that Lone Star has not established standing, as "future injuries" are insufficient to establish standing. Lone Star argues that threats of enforcement are enough. However, "a threat to institute enforcement proceedings is not a final agency action (even if it is an agency action within the APA), and hence, there is no jurisdiction to review an agency's threat of litigation." *Circuit City Stores, Inc. v. E.E.O.C., Inc.*, 75 F. Supp. 2d 491, 512 (E.D. Va. 1999). Though Lone Star attempts to utilize a recent Supreme Court case to support its argument that the threat of enforcement is a sufficient injury to establish standing, it is not sufficiently analogous to this case to persuade the court of its applicability. *See Susan B. Anthony List v. Driehaus*, — U.S. —, 134 S. Ct. 2334 (2014). For example, the threat in the *Susan B. Anthony List v. Driefaus*, was of particular concern because it imposed a burden on electoral speech. And, the case specifically does not hold that the threat of Commission proceedings standing alone is sufficient. *Id.* at 2345–46. The court chose not to make that decision because the threat in the case was backed by the additional threat of criminal prosecution. Here, there are no criminal consequences being threatened against Lone Star. A civil action has not been filed against Lone Star, and the E.E.O.C. has not even sought judicial enforcement of a subpoena yet. The harm of the other harms alleged, such as release of information, also have not occurred. Therefore, the majority - if not all - of Lone Star's claims would likely fail under a standing analysis as well.